**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | | |
|---|---|---|
| MARYANN MADRILES, | ) | No. SA CV 13-1041-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 12, 2013, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 23, 2013, and August 6, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation ("JS") on March 3, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 18, 1963. [Administrative Record ("AR") at 63-64, 68-69, 73-74.] She has an eighth grade education, and past relevant work experience as an office clerk, packager, security guard, molder, and janitor.  [AR at 59-60, 65, 70, 75, 175-82, 189, 199-210, 236.]

On January 14, 2010, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging in both applications that she has been unable to work since March 17, 2008. [AR at 27, 120-40.] After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 27, 83-95.] A hearing was held on August 4, 2011, at which time plaintiff appeared without counsel and testified on her own behalf.  [AR at 27, 48-62.]  A medical expert ("ME") and a vocational expert ("VE") also testified.  [AR at 52-54, 59-60.]  On December 14, 2011, the ALJ determined that plaintiff was not disabled. [AR at 35.] When the Appeals Council denied plaintiff's request for review on May 29, 2013, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-10, 21]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date, March 17, 2008.[1]  [AR at 29.]  At step two, the ALJ concluded that plaintiff has the severe impairments of obesity; hypertension; diabetes; bilateral carpal tunnel syndrome; mild degenerative disc disease of the lumbar spine; and degenerative joint disease of the left knee.  [AR at 30.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.  [AR at 31.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to:

> lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and walk, with normal breaks, for a total of four hours in an eight-hour workday, and she can sit, with normal breaks, for a total of six hours in an eight-hour workday.  She can occasionally perform all postural activities.  Also, she may not perform any constant or repetitive fingering bilaterally.

[AR at 31.]  At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff "is capable of performing past relevant work as a Clerk, General."  [AR at 34.]

---

[1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  [AR at 29.]

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

Accordingly, the ALJ determined that plaintiff was not disabled at any time from March 17, 2008, through the date of the decision.  [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that: (1) the ALJ failed to properly consider the opinion of examining physician Dr. Moazzaz, that plaintiff "is limited to occasional fine and gross manipulation with the left hand[;]" and (2) the "new and material evidence provided to the Appeals Council supports remand."  [JS at 2-3, 6-9, 12-13.]  As explained below, the Court agrees with plaintiff in part and remands for further proceedings.

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a[n] . . . examining physician's uncontradicted medical opinion based on clear and convincing reasons."  Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

1  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or

2  examining] doctors', are correct." Id.

3       On October 22, 2008, Dr. Payam Moazzaz conducted a complete orthopedic examination

4  of plaintiff at the request of the Commissioner. [AR 259-63.] Dr. Moazzaz diagnosed plaintiff with

5  "[h]istory of bilateral carpal tunnel syndrome status post right carpal tunnel release." [AR at 262.]

6  Dr. Moazzaz opined that plaintiff retained the following RFC:

7          [l]ifting and carrying can be approximately 20 pounds occasionally and
            10 pounds frequently.  She can stand and walk up to six hours in an
8          eight-hour workday.  She can sit up to six hours in an eight-hour
            workday.  Climbing, stooping, kneeling, crouching can be done on a
9          frequent basis.  She may alternate sitting with standing every two
            hours to alleviate pain or discomfort.  She has no restrictions with
10        overhead activities.  She has no restriction with using the right hand
           for fine or gross manipulative movements.  With regard[] to the left
11        hand, fine and gross manipulative movements may be done on an
           occasional basis.

12

13  [AR at 262-63.]

14       On November 13, 2008, nonexamining physician Dr. R. Halpern completed a physical

15  residual functional capacity assessment of plaintiff. [AR at 264-68.] Dr. Halpern indicated that

16  plaintiff was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently;

17  standing and/or walking, with normal breaks, for a total of "about 6 hours in an 8-hour workday[;]"

18  sitting, with normal breaks, for a total of "about 6 hours in an 8-hour workday[;]" "frequent[]"

19  climbing, balancing, stooping, kneeling, crouching, and crawling; and "limited" with regard to

20  manipulative "[r]eaching all directions (including overhead)[;]" "[h]andling (gross manipulation)[;]"

21  "[f]ingering (fine manipulation)[;]" and "[f]eeling (skin receptors)." [AR at 265-66.] Specifically, with

22  regard to "manipulative limitation[s]," Dr. Halpern indicated that plaintiff "may do fine and gross

23  manipulative movements of her left hand.  There are no restrictions with using her right hand."

24  [AR at 266.]

25       On June 11, 2010, Dr. John Simmonds conducted another orthopedic examination of

26  plaintiff at the request of the Commissioner. [AR at 319-22.] Dr. Simmonds diagnosed plaintiff

27  with "[m]ild to moderate degenerative disease of the lumbosacral spine with myofascial pain of the

28  lower back[;]" and [m]ild to moderate early arthritic changes involving the left knee." [AR at 322.]

He opined that plaintiff retained the RFC to: lift and carry "approximately 50 pounds occasionally and 25 pounds frequently," stand and walk "limited to six hours in an eight-hour work day with normal breaks," perform postural activities "such as bending, kneeling and crawling" on a frequent basis, stoop and crouch on an occasional basis, and walk on uneven terrains, work at heights, and climb ladders on an occasional basis. [Id.] Dr. Simmonds opined that plaintiff "has full use of her hands for fine and gross manipulative movements." [Id.]

On June 23, 2010, nonexamining physician Dr. R. May completed another physical residual functional capacity assessment of plaintiff. [AR at 323-28.] Dr. May indicated that plaintiff was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for "at least 2 hours in an 8-hour workday[;]" sitting, with normal breaks, for a total of "about 6 hours in an 8-hour workday[;]" "occasional[]" climbing, balancing, stooping, kneeling, crouching, and crawling; "limited" with regard to gross and fine manipulation, and limited to "[f]requent[]" handling and fingering bilaterally. [AR at 324, 326.]

At the hearing, the ME testified that plaintiff retained the "ability to stand and/or walk for four out of eight hours with normal breaks," "[s]it for six out of eight hours with normal breaks," "lift and carry [10 pounds frequently and 20 pounds occasionally]," perform "all posturals" on an "occasional" basis, and perform "no constant, repetitive, manipulative tasks using both hands." [AR at 53-54.]

In his decision, in assessing plaintiff's RFC, the ALJ adopted the opinion of the ME and nonexamining physician, Dr. May, concluding that their RFC assessments were more restrictive than those of Dr. Moazzaz, Dr. Simmonds, and Dr. Halpern. [AR at 32 (ALJ stating that the limitations opined by examining physicians Drs. Moazzaz and Simmonds, and the initial nonexamining physician Dr. Halpern, were "not as limiting as [plaintiff's] residual functional capacity assessment"); see AR at 52-54, 323-32.] Additionally, the ALJ rejected the opinions of the examining physicians, Dr. Moazzaz and Dr. Simmonds, and nonexamining physician Dr. Halpern, on the basis that these physicians "did not have the opportunity to review all of the medical records. As a result, they lacked evidence essential to accurately assess [plaintiff's] condition." [AR at 32, 259-68, 319-22.]

1    Under the circumstances, the ALJ failed to provide a specific and legitimate reason for

2    rejecting Dr. Moazzaz's opinion that plaintiff was limited to occasional fine and gross manipulative

3    movements with the left hand.  [See AR at 32, 263.]  As an initial matter, the ALJ implied that the

4    RFC assessment he adopted -- which included the ME's opinion that plaintiff was only precluded

5    from "constant or repetitive fingering bilaterally" -- was the most restrictive in the record.  [See AR

6    at 32.]  This mischaracterizes the record, as Dr. Moazzaz opined that plaintiff was limited to

7    "occasional" fine and gross manipulative movements with her left hand, which is in fact more

8    restrictive than the ME's opinion.  [Compare AR at 53-54 with AR at 262-63]; see Reddick, 157

9    F.3d at 722-23 (ALJ's "findings were unsupported by substantial evidence based on the record

10   as a whole" when "[i]n essence, the ALJ developed his evidentiary basis by not fully accounting

11   for the context of materials or all parts of the testimony and reports [and h]is paraphrasing of

12   record material is not entirely accurate regarding the content or tone of the record."); Gallant v.

13   Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the

14   [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a

15   conclusion first, and then attempt to justify it by ignoring competent evidence in the record that

16   suggests an opposite result.") (internal citation omitted).

17   Moreover, the ALJ's finding that Dr. Moazzaz's opinion was not entitled to as much weight

18   as the ME's opinion because Dr. Moazzaz "did not have the opportunity to review all of the

19   medical records . . . [and a]s a result, . . . lacked evidence essential to accurately assess

20   [plaintiff's] condition" [AR at 32], is not supported by substantial evidence.  In particular, although

21   Dr. Moazzaz did not review plaintiff's medical records, his opinion was based on a complete

22   orthopedic examination of plaintiff, while the ME did not examine plaintiff.  See Lester, 81 F.3d at

23   830 ("The opinion of an examining physician is . . . entitled to greater weight than the opinion of

24   a nonexamining physician.").  In addition, Dr. Moazzaz's opinion is consistent with plaintiff's

25   treating physician's opinion that was considered by the Appeals Council.[3]  [See AR at 1-10, 386];

26   ───────────────

27       [3]    Among the additional evidence considered by the Appeals Council were records from Dr.
     Rosalia R. Osias, including a Physical Residual Functional Capacity Questionnaire completed on

28                                                                                          (continued...)

8

1   Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals

2   Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence

3   becomes part of the administrative record, which the district court must consider when reviewing

4   the Commissioner's final decision for substantial evidence.").          Finally, the ALJ's failure to

5   include Dr. Moazzaz's limitation to "occasional" fine and gross manipulative movements with her

6   left hand was not harmless because the VE's testimony that plaintiff is capable of performing her

7   past relevant work as an office clerk was based on the ALJ's hypothetical that included a limitation

8   of "no constant or repetitive fingering bilaterally." [AR at 263 (emphasis added).] Because the ALJ

9   did not ask the VE whether any of plaintiff's past relevant work could be performed by a person

10  with the limitation assessed by Dr. Moazzaz, i.e., only "occasional" fine and gross manipulation,

11  there is no evidence in the record that plaintiff could perform her past relevant work if she in fact

12  has such limitations.

13        Under the circumstances, the ALJ erred in his rejection of Dr. Moazzaz's opinion and

14  remand is appropriate.

15

16                                          **VI.**

17                          **REMAND FOR FURTHER PROCEEDINGS**

18        As a general rule, remand is warranted where additional administrative proceedings could

19  remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

20  Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is warranted

21  in order for the ALJ to reconsider the opinion of examining physician, Dr. Moazzaz.  [See AR at

22  259-63.] Next, with respect to Issue No. 2, the ALJ on remand shall consider the additional medical

23  evidence submitted to the Appeals Council and allow plaintiff to update the record with any new

24  relevant medical evidence.  [See AR at 350-424.]  In assessing the medical opinion evidence of

25

26        [3](...continued)
    December 28, 2010 [AR at 413-17 (indicating that plaintiff has "significant limitations with reaching,
27  handling or fingering")], and a Medical Assessment of Ability to do Work-Related Activities,
    performed on January 23, 2012. [AR at 386 (opining that plaintiff is limited to occasional "[s]imple
28  grasping," "[f]ine [m]anipulation," and "[r]eaching" with her left hand).]

1  Dr. Moazzaz, or any other physicians, the ALJ must explain the weight afforded to each opinion

2  and provide legally adequate reasons for any portion of the opinion(s) that the ALJ rejects.  Finally,

3  the ALJ is instructed to take whatever further action is deemed appropriate on remand and

4  consistent with this decision.

5  Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

6  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

7  for further proceedings consistent with this Memorandum Opinion.

8  **This Memorandum Opinion and Order is not intended for publication, nor is it**

9  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

10

11  DATED: April 17, 2014

12  _____
                        PAUL L. ABRAMS
                        UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28